**Ramon SURILLO and Argo, S.A., Plaintiffs,**

v.

**Bill N. WILLARD and Robert Kellam, Defendants.**

**Civ. No. 84–0102 (JAF).**

United States District Court, D. Puerto Rico.

Aug. 7, 1986.

R. Enrique Surillo-Ascar, San Juan, P.R., for plaintiffs.

Gabriel I. Penagaricano, Santurce, P.R., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND JUDGMENT

FUSTÉ, District Judge.

This diversity case involves a dispute over the title of an aircraft registered in the United States of America, at the Department of Transportation, Federal Aviation Administration. Plaintiff Ramón Surillo seeks a declaration by this court that the airplane, even though registered in the name of Bill N. Willard, defendant herein, actually belongs to said plaintiff. *See* 49 U.S.C. Sec. 1401. Since registration of an aircraft is not evidence of title, the matter was decided on the merits. We find for defendant Bill N. Willard. The airplane belongs to him.

The case was tried before the court on July 21–22, 1986. We are faced with a case involving commercial transactions over a World War II vintage aircraft, Curtiss C-46, N67977. The aircraft, registered at the Federal Aviation Administration as belonging to named defendants Bill N. Willard and Robert C. Kellam since February 16, 1976, was the object of contracts at the Dominican Republic and perhaps Puerto Rico. The court's impression after receiving the evidence and after having heard the witnesses is that these commercial transactions, partly reduced to writing and also the object of oral agreements, were not fully explained to the court by plaintiff Ramón Surillo. The witnesses for plaintiff gave the court incomplete versions of the occurrences that led to the suit. Parol evidence by both parties was the rule and not the exception. Official documents of dubious value, seen in light of the testimony, issued by authorities of the Dominican Republic, were offered in evidence. Said documents, seen in light of testimonial evidence, seemed to depart from the prevailing parol evidence that was submitted, mostly without objection. We now attempt to decipher what we categorized as a "tropical transaction", obviously not to be used as a model of how business should be conducted. Jurisdiction under 28 U.S.C. Sec. 1332 is present. The parties are of diverse citizenship. The matter in controversy exceeds $10,000, exclusive of interests and costs.

As of February 12, 1976, Bill N. Willard and Robert C. Kellam were co-owners of a C-46 aircraft, serial 22533, nationality and registration marks being N67977. On October 26, 1977, Bill N. Willard, as owner, and Argo, S.A., a corporation organized under the laws of the Dominican Republic, entered into an aircraft lease purchase agreement, which consisted of two documents, Exhibits 1 and 2. The documents, seen together in light of the parol evidence received, show that the parties agreed to have Argo, S.A. lease the N67977 for six-month period intervals, renewable at the wish of the parties, the rent being $2,000 a month. At the time of the lease, the airplane was not airworthy. The lessee, Argo, S.A., was to invest monies to put the aircraft in flying condition. As a matter of fact, some $25,000 were spent to that effect. The parties agreed that out of the $2,000 monthly rental, $1,000 would be credited towards the eventual purchase price of $65,000. Said price included, in addition to the only leased airplane N67977, the purchase of some equipment and of another aircraft of the same vintage, N67940, which was grounded at the San Juan International Airport. The contract, in that part represented by Exhibit 2, was subsequently extended for six-month periods up and until at least September 1981. Two of the extensions were reduced to writing. Exhibit 3, dated September 26, 1979, extended the contract for six months.

Exhibit 4, dated March 26, 1980, extended the contract for an additional period of six months. Notwithstanding that fact, we reinstate our appraisal of the evidence as showing that other six-month oral contracts were negotiated up to and including September 1981 to cover all aspects of the contract. The $2,000 monthly payment for the period 1977 to 1981 was done in a variety of ways. Some payments were made by check, others were made partly by check and in cash. Other payments most probably were simply made in cash. Some of the payments were made in Puerto Rico. Other payments were made in the Dominican Republic and most probably some payments were made in the U.S. Virgin Islands. As expected, the parties could not agree on the monies paid under the contract. Argo, S.A. had incomplete records of payment. Defendant Willard simply had no records of payment. Our own appraisal of the evidence is that the first payment was most probably made in March 1978, when the airplane was placed in operating condition. This was part of the oral agreement between the parties. The last payment was made on September 16, 1981. Payments are summarized as follows:

| | | |
|---|---|---|
| Year 1978 (April to December) | 9 payments for a total of | $18,000 |
| Year 1979 (January to December) | 12 payments for a total of | 24,000 |
| Year 1980 (January to December) | 12 payments for a total of | 24,000 |
| Year 1981 (January to September) | 9 payments for a total of | 18,000 |
| | Total Payments: | $84,000 |

Of the total amount of $84,000, the court received evidence of receipts and/or cancelled checks to cover the months of June, July, August, and September 1981. Therefore, it is to be presumed that prior payments were made. Fed.R.Evid. 302, Local Rule of Evidence 16(10), 32 L.P.R.A. Ap. IV

R. 16. Defendant Willard failed to rebut the presumption.

The intent of the parties was that the option to purchase N67977 was valid if the lease agreement, as extended on a six-month basis up to late 1981, was complied with. As stated before, the intent of the parties was that out of the $84,000 received for rent for the period April 1978 to September 1981, one half, that is, $42,000, was to be applied towards the purchase price of $65,000 that included N67977, N67940, and some equipment.[1] At the time of exercising the option, an additional $2,000 were payable, not as a monthly rental payment, but simply as a final payment toward the $65,000 price. The purchase option was for the two airplanes and the equipment, not for one of the items only. It was a package deal.

The option to purchase was exercised on October 6, 1981. Attorney Pedro M. González, San Juan, Puerto Rico, representing Argo, S.A., wrote to defendant Willard and expressed Argo's intent. A $2,000 manager's check was enclosed. However, the option was exercised only over N67977. Argo requested Willard to execute the title documents on behalf of Argo. Attorney González' letter seemed to ignore that the option had to be exercised thirty days in advance of purchase date. Therefore, the purchase would be effective on November 6, 1981, that is, thirty days after Pedro M. González' October 6th letter to Argo, Plaintiff's Exhibits 5 and 6.

On November 4, 1981, defendant Willard wrote to Argo. He claimed that the October and November $2,000 monthly payments were due and owing. Willard further claimed that Argo owed him $18,000 over the transaction. He indicated his intention to terminate the lease and purchase agreement.[2] On November 9, 1981, attor-

---

**1.** The evidence received was that N67940 was not covered by any lease. Simply put, there was an option on the part of Argo to buy the same. Argo, S.A. never exercised said option and, as a matter of fact, N67940 was lost as scrap to the Puerto Rico Ports Authority for non-payment of airport fees. We cannot find from the evidence the final disposition made of the equipment. We do find that the obvious intent was that Argo, S.A. would take over the direct custody of the grounded aircraft.

**2.** The evidence shows that the last payment made by Argo was for the month of September 1981. Argo had to give thirty-day notice of intent to purchase. This was done October 6,

ney John B. Nichols, St. Croix, U.S. Virgin Islands, wrote to attorney Pedro M. González regarding his letter of October 6, 1981 to Willard. Nichols disclaimed any obligation on the part of Willard to sell under the circumstances we have described. He requested that the airplane, N67977, be returned to Willard.

Argo, S.A. did not react in a businesslike fashion. The Dominican corporation assumed that it had title to the airplane effective October 6, 1981. Willard contested Argo's pretensions. Argo, S.A. kept the airplane. The parties engaged in a legal and administrative battle over the title to and possession of the aircraft.

Litigation was commenced in this court, *Willard v. Argo, S.A.*, 81–2247(GG). There, Willard claimed damages from Argo for the latter's use of Willard's airplane. The case was dismissed for lack of prosecution under Fed.R.Civ.P. 41(b) on February 23, 1983. The parties also litigated in the Dominican Republic. On March 30, 1982 a Dominican court reversed a decision by the Dominican Civil Aeronautics Board that had ordered that the aircraft be turned over to Willard. The Dominican court determined that the Board had no jurisdiction to order or pass upon the title claim of Willard against Argo, S.A. Plaintiff's Exhibit 14; Defendant's Exhibits J and L. The fact remained that Argo, S.A. had not complied with the terms and conditions of this lease purchase contract. Argo, S.A. had decided to self-adjudicate the matter of title over the aircraft even though monies were due and owing to the legal owner, Willard. Under these conditions, Argo transferred the airplane to plaintiff Ramón Surillo on July 9, 1983. Plaintiffs' Exhibit 15.

The so-called contract running from Argo, S.A. to Ramón Surillo was simply an assignment of rights. Argo, S.A. allegedly owed Surillo more than $60,000. On July 9, 1983, Surillo assigned Argo's rights over the aircraft for $15,000 of the $60,000 owed. On that same date, Argo, S.A. entered into a management contract with Air-Mar Shipping Dominicana, S.A. (a Surillo-owned corporation) to take over the business of Argo, S.A. and use their U.S. Civil Aeronautics Board and Dominican permits to haul cargo between the Dominican Republic and the United States of America. It was convenient for Surillo to appear as having acquired the aircraft. By executing the assignment of rights' agreement, the airplane was one step removed from its owner Willard, who still was trying to obtain possession of the aircraft. The aircraft was an essential element of Argo's business. Surillo and its Dominican corporation, Air-Mar Shipping Dominicana, S.A., could not take any chance in losing the aircraft. We find that the only reason why Argo, S.A. attempted to convey "title" of the aircraft to Surillo was to protect the same from Willard's repeated attempts to obtain possession of the same.

In taking over the aircraft, Ramón Surillo knew or should have known of the controversy between Argo, S.A. and Willard. Plaintiff's Exhibit 15 so confirms. Within the contract, we find the necessary factual background for any prudent businessman to realize that there was a genuine controversy over the title of the aircraft. The aircraft, being registered in the United States, had to be the object of a title transfer before the Federal Aviation Administration. Surillo elected to "buy" the aircraft and litigate against Willard to obtain a

1981, obviously to be effective November 6, 1981. Willard's contention of being entitled to collect rent for N67977 for October–November 1981 was valid. Furthermore, the $18,000 outstanding balance claim seems to be proper. If we deduct $42,000 from the purchase price of $65,000 and further credit the $2,000 sent by attorney González to Willard, we find that Argo still had to pay Willard $21,000, plus the months of October and November 1981 in order to comply with the $65,000 purchase price option.

Willard's claim of $18,000 is not far removed from reality if we take into account the loose accounting kept by both Argo, S.A. and Willard. We find that at this point in time, that is, November 4, 1981, Willard's claim was legitimate. Defendants' Exhibit I. Argo had to pay Willard anywhere from $18,000 to $21,000, plus the rental for October–November, 1981 as a condition precedent to satisfying its obligations under the lease-purchase agreement. However, Argo, S.A. failed to meet this financial obligation.

valid federal title. When he acquired the aircraft, he knew of the following:

(1) That there existed between Argo, S.A. and Willard a lease purchase agreement;

(2) that the contract had allegedly expired;

(3) that Argo, S.A. was claiming having exercised certain option rights to buy two airplanes and some equipment;

(4) that Bill Willard had refused to convey title over the aircraft and had sued before Dominican courts to obtain the possession of the property;

(5) that Willard had sued Argo, S.A. in the federal court in San Juan for damages, Civil No. 81–2247 (GG), because the airplane was illegally retained by Argo;

(6) that the stock of Argo, S.A. had been sold to a group of investors leaded by Justo Cabrera as early as March 1983. Mr. Cabrera had warned Mr. Surillo of the dispute over the aircraft. In turn, the Cabrera group was litigating against Argo's former board of directors who had refused to give way to the Cabrera group.

We further find that the Surillo-Argo, S.A. relationship was close indeed, to the point that the Surillo Dominican business, Air-Mar Shipping Dominicana, S.A. used Argo's office and telex machine in the Dominican Republic. Defendant Willard proved to the court's satisfaction that Surillo finally moved the aircraft to San Juan, Puerto Rico after convincing Dominican authorities that Willard had so authorized. To that effect, the court received in evidence defendants' Exhibits Q and R. These are telexes allegedly sent by Willard to Argo's telex machine in the Dominican Republic (Air-Mar), authorizing the movement of the aircraft. We cannot find from the evidence who sent the telexes. However, we conclude that Willard did not send the telexes. These telexes were utilized by Surillo/Argo, S.A. to clear the aircraft's departure to San Juan. These telexes are dated December 4, 1985. As of said date, Argo, S.A.'s new ownership, under Justo Cabrera, had detained the aircraft with the Dominican CAB's consent at Las Américas Airport, Dominican Republic. The telexes were used by Surillo/Air-Mar Shipping Dominicana, S.A./Argo, S.A. to bring the airplane to San Juan, where this litigation was about to conclude by trial. It is inconceivable that Willard would request and/or authorize Air-Mar (Surillo) to ferry his airplane to San Juan. We do not afford credibility to the Surillo case presentation.

■ We find that, as a matter of fact, the owners of C–46 N67977 are Bill N. Willard and Robert C. Kellam as per the FAA registration certificate of February 12, 1976. The plaintiffs, having acted in bad faith, are not entitled to the relief sought in the complaint. Under this factual scenario, plaintiffs are not entitled to claim rights of ownership to C–46 N67977. Pursuant to article 280 of the Civil Code, 31 L.P.R.A. Sec. 1111, and contrary to plaintiffs' claim, it is Willard and Kellam, the owners, the ones that hold a right or cause of action against Surillo, as possessor of the aircraft, to recover it. A party who was not the owner, such as Argo, S.A., could not dispose of the property in dispute, in this case the aircraft. Argo, S.A. sold property to Surillo, which property did not belong to Argo. Surillo cannot claim innocence or third-party status to such sale. Even though our Civil Code says nothing with respect to the sale of something belonging to another, the fact remains that such sale cannot stand. *Emanuelli v. Cadierno*, 50 P.R.R. 128, 138–40. The sale of another's property in its own and genuine sense, as a mode of transfer, is essentially null and void and cannot be the lawful object of a contract of sale. *Emanuelli*, 50 P.R.R. at 140.

■ Pursuant to article 1247 of the Civil Code, P.R. Laws Ann. tit. 31 sec. 3496, and taking into consideration the bad faith which motivated Argo, S.A. and Surillo in bringing about the mentioned assignment of rights of July 9, 1983, we find that Surillo could not acquire from Argo inexistent rights. Surillo is not a good faith

third party under civil law. He is not entitled to protection. Both Argo, S.A. and Surillo's claims of title are null and void. Rescission obliges the return of the aircraft which was the object of the contract with its fruits and the price with interest. *See* text, article 1247, and *Olmedo v. Balbín*, 69 P.R. Dec. 588, 593 (1949). Surillo, as part of this transaction, tantamount to a fraudulent conveyance, is not entitled to the benefits of articles 1246 and 1247 of the Civil Code, P.R. Laws Ann. tit. 31 secs. 3495, 3496. Rescission of contract and restitution of the aircraft will be ordered. Velázquez, *Las Obligaciones* Sec. 314 (1964).

Even though the counterclaim interposed in this case by Willard[3] against Surillo and Argo, S.A. was dismissed with prejudice as to Argo, S.A., we decide that Willard is entitled to partial relief against plaintiff Ramón Surillo. Plaintiff Surillo has deprived Willard of receiving revenue from C–46 N67977. Even though Willard claims $5,000 a month for airplane revenue, we find that the $2,000 figure previously agreed upon between Willard and Argo, S.A. is the proper amount to be recovered. Surillo took possession of the aircraft on July 9, 1983. Therefore, he shall pay Willard $2,000 a month, or a rate of $66.67 daily, until the aircraft is returned to Willard, as compensation for the use of said aircraft. The amount due and owing at the date of the conclusion of trial, July 22, 1986, is $73,000.15. An additional amount per diem of $66.67 shall be due and owing until paid, all with interest at the rate of 6.35%.[4] Plaintiff Surillo is ordered to deliver the aircraft as is formally to Bill N. Willard under penalty of civil contempt, within ten (10) days of this judgment becoming final. Judgment shall be entered accordingly.

IT IS SO ORDERED.

3. Willard is the only party defendant before the court. Kellam, although named in the complaint, was not served with process. Willard, in turn, counterclaimed against plaintiffs Ramón Surillo and Argo, S.A.

4. *See* Certification, Department of the Treasury, Fiscal Service, to Clerks of United States District Courts, dated July 18, 1986.